UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY CAGLIA, | Case No.: 1:19-cv-1376 JLT |
| Plaintiff, | ORDER GRANTING PLAINTIFF'S APPEAL (DOC. 25) AND DENYING THE COMMISSIONER'S REQUEST TO AFFIRM THE ADMINISTRATIVE DECISION (DOC. 27) |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | ORDER REMANDING THE ACTION PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g) |
| Defendant. | ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF PLAINTIFF ANTHONY CAGLIA AND AGAINST DEFENDANT, THE COMMISSIONER OF SOCIAL SECURITY |

Anthony Caglia asserts he is entitled to disability insurance benefits and a period of disability under Title II of the Social Security Act. Plaintiff argues the administrative law judge erred in evaluating the record and seeks judicial review of the decision denying his application for benefits. (*See generally* Doc. 25.)  the matter is **REMANDED** for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

**BACKGROUND**

In March 2015, Plaintiff applied for benefits, alleging disability due to blindness, "no feeling in [his] hands," severe shoulder pain, and pain in his teeth. (Doc. 15-2 at 70.) The Social Security Administration denied the application at the initial level and upon reconsideration. (*See id.* at 24.) Plaintiff requested an administrative hearing regarding his applications and testified before an ALJ on

March 21, 2018.  (*Id.* at 24, 41.)  The ALJ found Plaintiff was not disabled and issued an order denying benefits on June 19, 2018.  (*Id.* at 21-33.)  Plaintiff requested review of the decision by the Appeals Council, which denied the request on May 22, 2019.  (*Id.* at 10-12.)  Therefore, the ALJ's determination became the final decision of the Commissioner of Social Security.

## STANDARD OF REVIEW

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Social Security Act.  When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error.  42 U.S.C. § 405(g).  The ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence.  *See Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)).  The record as a whole must be considered, because "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion."  *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

## DISABILITY BENEFITS

To qualify for benefits under the Social Security Act, Plaintiff must establish she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 1382c(a)(3)(A).  An individual shall be considered to have a disability only if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).  The burden of proof is on a claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).  If a claimant establishes a prima facie case of disability,

2

the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial gainful employment. *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

## ADMINISTRATIVE DETERMINATION

To achieve uniform decisions, the Commissioner established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The process requires the ALJ to determine whether Plaintiff (1) is engaged substantial gainful activity, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity to perform to past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level. *Id.* The ALJ must consider testimonial and objective medical evidence. 20 C.F.R. §§ 404.1527, 416.927.

Pursuant to this five-step process, the ALJ determined Plaintiff did not engage in substantial gainful activity after the alleged onset date of September 2, 2014. (Doc. 15-2 at 26.) Second, the ALJ found Plaintiff has the following severe impairments: "exogenic obesity, left eye blindness since age 11, amblyopia of the right eye, neuropathy in the bilateral hands, diabetes mellitus, hypertension, mild degenerative disc disease of the lumbar spine, and right knee bursitis." (*Id.*) The ALJ noted Plaintiff's friend also reported he had been depressed, but not find "medically determinable mental impairments evidenced in the record." (*Id.* at 27.) At step three, the ALJ determined Plaintiff's impairments did not meet or medically equal a Listing. (*Id.*) Next, the ALJ found:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he can lift and carry 50 pounds occasionally and 30 pounds frequently, stand and walk four hours and sit four hours in an eight hour workday [and] the claimant requires the ability to sit or stand at will. The claimant can occasionally climb, balance, stoop, kneel, crouch, and crawl. In addition, the claimant must wear corrective glasses at work for the right eye and he cannot do work requiring binocular vision because he is blind in the left eye.

(*Id.* at 28.) With this residual functional capacity, the ALJ determined at step four that Plaintiff was "unable to perform any past relevant work." (*Id.* at 31.) However, ALJ found Plaintiff could perform "jobs existing in significant numbers in the national economy." (*Id.*) Therefore, the ALJ concluded Plaintiff was not disabled as defined by the Social Security Act from September 2, 2014, through the date of the decision. (*Id.* at 32.)

## DISCUSSION AND ANALYSIS

Plaintiff argues that given the loss of his left eye and poor vision in his right eye, the ALJ erred in finding Plaintiff was not disabled. (Doc. 25 at 3, 7-8.) Plaintiff also reports he has depression, for which he is receiving treatment. (*Id.* at 5, 7-8.) On the other hand, the Commissioner asserts the "decision is supported by substantial evidence and is in accordance with the law." (Doc. 27 at 9.)

**A.    Plaintiff's Mental Impairment(s)**

As an initial matter, Plaintiff reports he is now receiving "services weekly with Mental Health in Sanger, CA." (Doc. 25 at 5.) He asserts that he is suffering from depression, which he attributes to a lack of "hope for help." (*Id.* at 5, 7-8.) Thus, it appears Plaintiff believes the ALJ erred at step two of the sequential evaluation in finding Plaintiff's depression was not a severe impairment. (*See id.*)

At step two of the sequential evaluation, a claimant must make a "threshold showing" (1) he has a medically determinable impairment or combination of impairments and (2) the impairment or combination of impairments is severe. *Bowen v. Yuckert*, 482 U.S. 137, 146-47 (1987); *see also* 20 C.F.R. §§ 404.1520(c), 416.920(c). Thus, the burden of proof is on the claimant to establish a medically determinable severe impairment that significantly limits his physical or mental ability to do basic work activities, or the "abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(a), 416.921(a).

      1.    Medically determinable impairment

The ALJ observed that Plaintiff's friend, Shannon Miller, "reported the claimant had been depressed." (Doc. 15-2 at 27; *see also id.* at 29.) The ALJ noted Ms. Miller also believed Plaintiff "had been isolated and did not want to do much." (*Id.* at 29.) The ALJ found "allegations of depressive symptoms on November 20, 2017." (Doc. 15-2 at 27, citing Exh. 7F, pp. 17, 33 [Doc. 15-2 at 324, 340].) However, the ALJ determined there did "not appear to be any mental diagnoses or treatment in the record." (*Id.*) Therefore, the ALJ concluded "there are no medically determinable mental impairments evidenced in the record." (*Id.*)

At an intake appointment to establish care with a new physician in November 2017, Plaintiff reported symptoms in the past two months that included little interest or pleasure in doing things; feeling down, depressed, or hopeless; and feeling tired or having little energy. (Doc. 15-2 at 339-341.)

Dr. Pedram Pirsaraei indicated he would "Consider Major Depressive Disorder," but did not prescribe any medication or treatment for Plaintiff. (*Id.* at 341-342.) As the ALJ observed, the following treatment note from Dr. Pirsaraei stated Plaintiff "was diagnosed with hypertension, pre-diabetes, and hyperlipidemia." (*Id.* at 29, citing Exh. 7F, pp. 30-21 [Doc. 15-2 at 337-338]; *see also id.* at 335.). Depression was not listed as either a diagnosed condition or in Plaintiff's "problem list." (*See, e.g.*, *id.* at 317, 335.) The ALJ found Plaintiff's "[e]xaminations were normal." (*Id.* at 29.) Dr. Pirsaraei indicated Plaintiff did not report feeling down or hopeless, and Dr. Pirsaraei opined Plaintiff did not exhibit psychological symptoms at subsequent examinations in December 2017, January 2018, and February 2018. (*Id.* at 312-313, 317, 319, 336-337.)

The Ninth Circuit determined that a diagnosis from an acceptable medical source is a prerequisite to a finding that a medically determinable impairment exists, and symptoms by themselves are not sufficient to establish such an impairment. *Ukolov v. Barnhart*, 420 F.3d 1002, 1005-06 (9th Cir. 2005). Because Plaintiff has not identified any evidence in the record that he was diagnosed with depression or received treatment for the condition, he fails to meet the burden of showing depression was a medically determinable impairment during the adjudicated period. *See id.*

2. Severity of Plaintiff's depression

Assuming Plaintiff met the burden of show his depression was a medically determinable impairment during the adjudicated period, he must next show the impairment was severe. *Bowen*, 482 U.S. at 153 (1987); 20 C.F.R. § 404.1520(c). The Ninth Circuit determined that "[t]he mere existence of an impairment is insufficient proof of a disability." *Matthews v. Shalala*, 10 F.3d 678 (9th Cir. 1993). In other words, even a medical diagnosis does not make an impairment "severe."

For an impairment to be "severe," it must "significantly limit[]" the claimant's "ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). Basic work activities are "the abilities and aptitudes necessary to do most jobs." *Id.*, §§ 404.1522(b), 416.922(b). These activities include "[u]nderstanding, carrying out, and remembering simple instructions;" "[u]se of judgment;" "[r]esponding appropriately to supervision, co-workers and usual work situations;" and "[d]ealing with changes in a routine work setting." *Id.* An impairment is "not severe" if the evidence establishes the impairment has "no more than a minimal effect on an individual's ability to do work." *Smolen v.*

5

*Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). Because Plaintiff does not identify any functional limitations—such as difficulties with memory or concentration— that may be attributed to depression, he fails to carry the burden at step two. *See Bowen*, 482 U.S. at 153; 20 C.F.R. § 404.1520(c).

**B.   The Physical Residual Functional Capacity**

A claimant's RFC is "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a); *see also* 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(c) (defining an RFC as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs"). In formulating an RFC, the ALJ weighs medical and other source opinions. *See, e.g., Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226 (9th Cir. 2009). Further, the ALJ must consider "all of [a claimant's] medically determinable impairments," whether severe or not, when assessing a RFC. 20 C.F.R. §§ 405.1545(a)(2), 416.945(a)(2).

1.   Waiver

As an initial matter, the Court notes Plaintiff's severe physical impairments included obesity, neuropathy, diabetes, hypertension, degenerative disc disease, and right knee bursitis. (*See* Doc. 15-2 at 26.) The ALJ identified a physical RFC that limited Plaintiff to light work with additional postural limitations. (*See* Doc. 15-2 at 28.) Plaintiff does not challenge these exertional and postural restrictions in the RFC, and instead focuses on the findings related to his vision. (*See generally* Doc. 25 at 3, 7-10.)

The Ninth Circuit has indicated that it cannot "manufacture arguments for an appellant." *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) (quoting *Greenwood v. Fed. Aviation Admin.*, 28 F.3d 971, 977 (9th Cir. 1994)). Rather, the Court will "review only issues with are argued specifically and distinctly." *Id.* Therefore, when a claim of error is not argued and explained, the argument is waived. *See id.* at 929-30 (holding a party's argument was waived because the party made only a "bold assertion" of error, with "little if any analysis to assist the court in evaluating its legal challenge"); *see also Hibbs v. Dep't of Human Res.*, 273 F.3d 844, 873 n.34 (9th Cir. 2001) (finding the assertion of error was "too undeveloped to be capable of assessment"). Because Plaintiff failed to discuss or otherwise dispute the exertional and functional limitations identified in the RFC, Plaintiff has waived any challenge to these findings of the ALJ.

### 2. Visual limitations and the RFC

The ALJ determined as part of the RFC that Plaintiff "must wear corrective glasses at work for the right eye and he cannot do work requiring binocular vision..." (Doc. 15-2 at 28.) In support of this determination, the ALJ indicated he gave "significant weight" to the opinions of physicians who examined and treated Plaintiff. (*Id.* at 29-30.) In addition, "some weight" was given to the opinions of physicians who reviewed the record and determined Plaintiff could perform work. (*Id.* at 31.)

Under the regulations, "licensed physicians and certain qualified specialists" are considered acceptable medical sources, and their opinions may be substantial evidence in support of an RFC. 20 C.F.R. § 404.1513(a); *see also Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). Where the acceptable medical source opinion is based on an examination, the "physician's opinion alone constitutes substantial evidence, because it rests on his own independent examination of the claimant." *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). In general, the opinion of a treating physician is afforded the greatest weight, but it is not binding on the ultimate issue of a disability. *Id.*; *see also* 20 C.F.R. § 404.1527(d)(2); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). An examining physician's opinion is given more weight than the opinion of non-examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). However, the opinions of non-examining professionals may also constitute substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record. *See Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

The ALJ observed that in 2014, Dr. Stewart found "the claimant's right eye achieved visual acuity of 20/15" with prescription glasses. (Doc. 15-2 at 29, citing Exh. 2F, p. 3 [*id.* at 283].) However, Dr. Stewart indicated that he was "mak[ing] no judgments about disability, but if [Plaintiff] wears his glasses as prescribed, his right eye sees very well, and is protected." (*Id.* at 283.) The ALJ appears to adopt the recommendation that Plaintiff wear glasses in the RFC. However, the record is clear that Plaintiff's visual acuity worsened in the following years, and the findings of Dr. Stewart offer little support to the ALJ's conclusions.

The ALJ also noted that Dr. Lakshmanaraju Raju performed a consultative examination in July 2015. (Doc. 15-2 at 29-30, citing Exh. 3F [*id.* at 284-292].) At the examination, Plaintiff told Dr. Raju

that he had been "developing some visual difficulties with his right eye as well," and his optometrist said he was "legally blind." (*Id.* at 287.) Dr. Raju determined Plaintiff's visual acuity in his right eye was 20/70 without glasses and 20/50 with glasses. (*Id.* at 288.) Dr. Raju indicated Plaintiff had "visual limitations" in identifying Plaintiff's functional assessment but did not identify specific limitations. (*See id.* at 291-92.) Thus, though the ALJ indicated he gave the opinion of Dr. Raju "significant weight" (*id.* at 30), Dr. Raju did not identify any limitations such that the Court may find the opinion of Dr. Raju supports the ALJ's conclusion that if he wears corrective glasses, Plaintiff may work in positions that do not require binocular vision.

      The ALJ also considered vision findings from Drs. Evans and Kebo, which he gave "significant weight." (Doc. 15-2 at 30.) The ALJ noted that in February 2016, Drs. Evans determined Plaintiff's uncorrected distance visual acuity was 20/150 uncorrected and 20/50 with correction. (*Id.*, citing Exh. 6E, p. 2 [*id.* at 231].) The ALJ also observed that the same month, Dr. Kebo found Plaintiff's "right eye vision was 20/80 without correction and 20/50 with correction" in the right eye. (*Id.*, citing Exh. 8E, p. 3 [*id.* at 243].) Further, the ALJ noted that Plaintiff's "corrected visual acuity was 20/50 in October and 20/40 in November [2017]." (*Id.*, citing Exh. 6F, pp. 4, 6 [*id.* at 301, 303].) These opinions related to Plaintiff's vision from his optometrists were based upon independent examinations, and they may constitute substantial evidence supporting the decision. *See* 20 C.F.R. § 404.1527; *Orn v. Astrue,* 495 F.3d 625, 631 (9th Cir. 2007) (explaining the opinion of a treating physician will be given "controlling weight" where supported by clinical findings and examinations). Importantly, however, the physicians did not offer any findings related to Plaintiff's functional limitations—if any—with either the uncorrected vision or corrected vision levels.

      Finally, the ALJ indicated he gave "some weight" to the opinions of the State Agency physicians, Drs. Frye and Christian, who reviewed the available record at the initial and reconsideration levels and concluded Plaintiff could perform medium work with vision limitations. (Doc. 15-2 at 31, citing Exh. 1A, pp. 7-8, Exh. 3A, pp. 7-8 [*id.* at 76-77, 87-88]; *see also id.* at 79, 86.) Notably, however, Drs. Frye and Christian both cited the visual acuity of 20/15 in support of their findings related to Plaintiff's visual limitations. (*Id.* at 76-77, 87-88.) It does not appear that either physician reviewed records that reflected Plaintiff's worsening vision, such as the findings of 20/80

and 20/150 uncorrected vision. Likewise, neither physician reviewed records that indicated Plaintiff's corrected vision had worsened to 20/40 and 20/50 in 2017. Indeed, the ALJ acknowledged his belief that "the overall record supports additional restrictions" from those identified by Drs. Frye and Christian. (*See id.* at 31.)

The ALJ must have rendered his own medical conclusions to determine Plaintiff could perform work if he wore a corrected lens for his right eye, because no physician reviewed the visual findings from the examinations in 2016 and 2017. However, it is well-settled law that an ALJ may not do so and is not empowered to independently assess clinical findings. *See, e.g., Tackett v. Apfel*, 180 F.3d 1094, 1102-03 (9th Cir. 1999) (holding an ALJ erred in rendering his own medical opinion); *Banks v. Barnhart*, 434 F. Supp. 2d 800, 805 (C.D. Cal. 2006) ("An ALJ cannot arbitrarily substitute his own judgment for competent medical opinion, and he must not succumb to the temptation to play doctor and make his own independent medical findings); *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) (as a lay person, the ALJ is "simply not qualified to interpret raw medical data in functional terms"). Because no physician addressed the worsening visual acuity or assessed visual functional limitations, the Court is unable to find the ALJ's evaluation of the medical record was proper. Thus, the visual RFC determination is not supported by substantial evidence. *See Perez v. Comm'r of Soc. Sec.*, 2018 WL 721399 at *7-8 (E.D. Cal. Feb. 6, 2018) (finding an RFC lacked the support of substantial evidence without the support of a physician's opinion); *Perez v. Sec'y of Health & Human Servs.*, 958 F.2d 445, 446 (1st Cir. 1991) (holding "the ALJ's conclusions are not supported by substantial evidence" when an RFC is formulated without the findings of a physician).

### C.     Remand is Appropriate

The decision whether to remand a matter pursuant to sentence four of 42 U.S.C. § 405(g) or to order immediate payment of benefits is within the discretion of the district court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Except in rare instances, when a court reverses an administrative agency determination, the proper course is to remand to the agency for additional investigation or explanation. *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004) (citing *INS v. Ventura*, 537 U.S. 12, 16 (2002)). Generally, an award of benefits is directed when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence,
> (2) there are no outstanding issues that must be resolved before a determination of

disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen v*, 80 F.3d at 1292.  In addition, an award of benefits is directed where no useful purpose would be served by further administrative proceedings, or where the record is fully developed.  *Varney v. Sec'y of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir. 1988).

The RFC articulated by the ALJ lacks the support of substantial evidence in the record, and the matter should be remanded for further consideration. *See Tackett*, 180 F.3d at 1102-03 (remanding the matter to the Social Security Administration for reconsideration after finding the ALJ erred by offering conclusions not supported by any medical evidence); *Perez*, 958 F.2d at 446 (finding that where the ALJ offered an opinion the support of an "assessment of residual functional capacity by a physician, ... it is necessary to remand for the taking of further functional evidence").

## **CONCLUSION AND ORDER**

For the reasons set for above, the Court finds the ALJ erred in evaluating the medical record related to Plaintiff's visual acuity and limitations, and the ALJ's decision cannot be upheld.  *See Sanchez*, 812 F.2d at 510.  Accordingly, the Court **ORDERS**:

1. Plaintiff's appeal of the ALJ's decision (Doc. 25) is **GRANTED**;
2. The Commissioner's request that the administrative decision be affirmed (Doc. 27) is **DENIED**;
3. The matter is **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this decision; and
4. The Clerk of Court is **DIRECTED** to enter judgment in favor of Plaintiff Anthony Caglia and against Defendant, the Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   **October 4, 2021**              _ **/s/ Jennifer L. Thurston**
                                       CHIEF UNITED STATES MAGISTRATE JUDGE